STATE of Wisconsin, Plaintiff-Respondent,

v.

Brady T. TERRILL, Defendant-Appellant.

Court of Appeals

*No. 00–2152–CR. Submitted on briefs January 23, 2001.—Decided February 27, 2001.*

## 2001 WI App 70

(Also reported in 625 N.W.2d 353.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Eileen A. Hirsch*, assistant state public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Christian R. Larsen*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. PETERSON, J. Brady Terrill appeals his judgments of conviction for criminal damage to prop-

erty, contrary to WIS. STAT. § 943.01(2)(d),[1] two counts of criminal trespass to a dwelling, contrary to WIS. STAT. § 943.14, and disorderly conduct, contrary to WIS. STAT. § 947.01. Terrill also appeals an order denying his motion for postconviction relief. Terrill argues that his right to fundamental fairness and due process was violated because the circuit court accepted his plea and found him guilty after it had deferred acceptance of the plea.[2] We agree and therefore reverse.

## BACKGROUND

¶ 2. Terrill was charged with felony criminal damage to property. The complaint alleged that Terrill and his friends broke into and damaged a cabin in connection with a teenage beer party.

¶ 3. Terrill and the State entered into a plea agreement. The State would add three misdemeanor charges to which Terrill would plead guilty and be sentenced. Terrill would also plead guilty to the felony charge but the State would recommend that the circuit court defer acceptance of the plea to the felony. Terrill would be placed on "informal supervision" for thirty-six months. If he successfully complied with the agreement, the State would request that the felony charge be dismissed. If he failed to comply with the agreement, the circuit court would accept the plea to the felony, find him guilty and sentence him.

¶ 4. At the plea hearing, the State filed an amended information charging Terrill with three misdemeanors in addition to the felony. The circuit court

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

[2] Terrill additionally argues that his guilty pleas were not knowingly and intelligently entered. We do not address this argument.

accepted Terrill's plea to the misdemeanors and found him guilty. Terrill then pled guilty to the felony. In accordance with the plea agreement, the circuit court deferred acceptance of the plea. The circuit court then proceeded to sentencing on the misdemeanors.

¶ 5. The circuit court asked the owner of the cabin if he wished to make a statement before it pronounced sentence. The owner showed a videotape of the damaged cabin. At the conclusion of the videotape, the circuit court, on its own motion, reconsidered the plea agreement. It accepted Terrill's plea to the felony and found him guilty.

¶ 6. The State immediately moved to reopen and dismiss the misdemeanors. The circuit court denied the motion. The circuit court also denied Terrill's motion to reconsider.

¶ 7. Terrill filed a postconviction motion to vacate his convictions and to reinstate the plea agreement. The circuit court denied the motion. This appeal followed.

## STANDARD OF REVIEW

¶ 8. The trial court ordinarily has discretion whether to allow plea withdrawal. *See State v. Farrell*, 226 Wis. 2d 447, 453–54, 595 N.W.2d 64 (Ct. App. 1999). We will uphold a discretionary determination by the trial court as long as the court considered the facts of the record under the proper legal standard and reasoned its way to a rational conclusion. *See Burkes v. Hales*, 165 Wis. 2d 585, 590–91, 478 N.W.2d 37 (Ct. App. 1991). However, we will independently determine whether the established facts constitute a constitutional violation sufficient to warrant plea withdrawal

as a matter of right. *See State v. Sturgeon*, 231 Wis. 2d 487, 503–04, 605 N.W.2d 589 (Ct. App. 1999).

## DISCUSSION

¶ 9. Terrill argues that the circuit court accepted the plea agreement and was therefore bound by its terms. He contends that a manifest injustice occurred when the circuit court reconsidered its earlier acceptance of the agreement, thereby subjecting him to a harsher sentence than if he had pled guilty to the felony without the plea agreement.[3]

¶ 10. As a preliminary matter, the State argues that the circuit court never bound itself to the agreement. It contends that the circuit court repeatedly warned Terrill that it was not bound by the agreement and that it could accept his plea to the felony on its own motion. However, a review of the record reveals that the circuit court did in fact accept the plea agreement.

¶ 11. At the conclusion of the discussion about the wisdom of the plea agreement, the circuit court conducted a formal plea colloquy. It accepted Terrill's guilty pleas to the misdemeanors. Terrill then pled guilty to the felony count. The circuit court deferred acceptance of the plea. It then warned Terrill that any violation would be considered a violation of the terms. The circuit court stated:

---

[3] We note that the circuit court's action resulted in Terrill being convicted of one felony and three misdemeanors. He was originally charged with only the felony. The misdemeanors were added as part of the plea agreement. Terrill pled guilty to the misdemeanors in order to avoid a felony conviction. By the circuit court's action, Terrill ended up worse off than if he had pled to the felony without a plea agreement.

The court accepts the deferred acceptance of the guilty plea form. Mr. Terrill, with respect to count one, if you as much as spit on a sidewalk, exceed the speed limit by one mile per hour and get a citation for it and I become aware of it, I'm going to accept your plea in count one.

. . . .

[A]nd you need . . . to understand, you need to understand, Brady, I don't care how strong of a will you have; if you cross that line, I'm going to accept your plea and I'm going to sentence you on a five-year felony, and you need to think about that every day of your life at the same time that you think about your sobriety.

¶ 12. Additionally, in its written decision denying Terrill's postconviction motion, the circuit court recognized that it had accepted the plea agreement saying that "[a]cceptance and rejection of the diversion agreement took place within the confines of a short hearing . . . . There was an acceptance of a diversion agreement by the court . . . ." We conclude the circuit court accepted the plea agreement.

¶ 13. Once it accepted the plea agreement, Terrill argues that the circuit court was bound by the terms of the agreement. In *State v. Comstock*, 168 Wis. 2d 915, 950–51, 485 N.W.2d 354 (1992), our supreme court held that the circuit court's obligation to honor an approved plea agreement is analogous to the prosecutor's obligation to honor a plea agreement:

If the prosecutor is bound by a valid plea agreement, and due process protects the defendant from the prosecutor's withdrawing from the agreement, we do not believe that considerations of double jeopardy and due process permit a circuit court to sua

sponte relieve the prosecutor from a valid plea agreement.

. . . .

[T]he circuit court's sua sponte order vacating the pleas significantly implicates the public's and the defendant's interests in finality, repose, and fairness in the same way as a prosecutor's attempt to withdraw from a validly accepted plea agreement.

*Id.* It is well established that a prosecutorial violation of a plea agreement "triggers considerations of fundamental fairness and is a deprivation of due process." *State v. Bond*, 139 Wis. 2d 179, 188, 407 N.W.2d 277 (Ct. App. 1987). Those considerations of fundamental fairness and due process bind a circuit court to an accepted plea agreement. *Comstock*, 168 Wis. 2d at 951.

¶ 14. In *State v. Barney*, 213 Wis. 2d 344, 570 N.W.2d 731 (Ct. App. 1997), the circuit court accepted a diversion agreement similar to the one in this case. Several months after sentencing, the circuit court revoked the agreement, but did not consider alternatives to revocation as was required by the agreement. We reversed and held that the circuit court was "obligated . . . to follow the terms of the agreement regarding revocation proceedings." *Id.* at 360–61.

¶ 15. *Comstock* and *Barney* are also consistent with federal law. In *United State v. Ritsema*, 89 F. 3d 392, 399 (7th Cir. 1996), the court of appeals noted that in federal court, as in state court, the court is barred from intruding upon negotiation of plea agreements, and there is no absolute right to have a guilty plea accepted. "Once the court has accepted a plea agreement, however, it is, as a general rule, bound by the terms of that agreement." *Id.* at 398–99. The sole

exception noted by *Ritsema* is the defendant's fraud upon the court. *Id.* at 400.[4]

¶ 16. Here, the circuit court concluded that it was not fully apprised of the gravity of the offense before accepting the agreement. After viewing the videotape, shown for the purposes of sentencing, the circuit court determined that the agreement was not in the public's interest. The circuit court stated that it was bound by *State ex rel. White v. Gray*, 57 Wis. 2d 17, 203 N.W.2d 638 (1973), to reconsider the plea agreement.

¶ 17. *Gray* requires a circuit court to consider whether an agreement is in the public interest. The court should consider not only the "benefit to the public in securing a prompt disposition of the case, but also the importance of a disposition that furnishes the public adequate protection and does not depreciate the seriousness of the offense or promote disrespect for the law." *Id.* at 30 (citation omitted).

¶ 18. However, the *Gray* inquiry must occur before the circuit court accepts a plea agreement, not after. As the holding in *Comstock* states:

> [B]efore accepting a defendant's guilty or no contest plea to the amended charges, the circuit court must satisfy itself that the amended charges fit the crime and that the amendments are in the public interest. A circuit court may, as this court has written, ask sufficient questions, including the prosecutor's reasons for entering the plea agreement, to satisfy itself of the wisdom of accepting the plea to reduced charges. This is law of longstanding in this state.

*Id.* at 927. *Comstock* specifically pointed out that its holding did not interfere with a trial court's duty to inquire into the public interest before accepting a plea:

---

[4] Here, the circuit court found there was no fraud.

This holding preserves the circuit court's right and duty to be apprised of all relevant information before accepting a guilty or no contest plea and before sentencing and allows the circuit court to make informed decisions protecting the public interest. . . . This holding comports with principles of fundamental fairness, finality, and repose.

*Id.* at 954.

¶ 19. In *Comstock*, the circuit court decided that a previously accepted plea agreement was not in the public interest. However, the supreme court reversed because the principles of fundamental fairness and finality outweigh the interests in reconsidering public interests after a plea agreement has been approved. Here, the circuit court properly inquired beforehand whether the plea agreement was in the public interest. Once the court made the decision to accept the plea agreement, it could not reverse its acceptance.

¶ 20. The circuit court further concluded that it was not required to reinstate the plea agreement because, unlike in *Barney*, a written order or judgment of conviction had not yet been filed with the clerk of court's office. *See* WIS. STAT. § 806.06(1)(b). In *Barney*, the circuit court entered an order approving the plea agreement. We held that the circuit court was then obligated to follow the terms of the agreement. *Barney*, 213 Wis. 2d at 360–61. While this distinction between *Barney* and the present case is factually correct, it is without legal importance.

¶ 21. In *Comstock*, the circuit court did not expressly find the defendant guilty and did not expressly order that a judgment of conviction be entered. Nevertheless, the supreme court held, "[w]hen the [plea hearing] ended, the defendant had every reason to believe that pursuant to the plea agreement the

four felony charges were terminated and that his convictions of the misdemeanors were final." *Id.* at 951.

¶ 22. What is important in this case, as in *Comstock* and *Barney*, is that the circuit court expressly accepted the plea agreement. It then moved on to sentencing. Terrill had every reason to believe, at that point, that he would not be found guilty of a felony unless he violated the plea agreement. Regardless whether there was a formal entry of judgment, the circuit court was bound by the terms of the agreement.

¶ 23. Last, the circuit court concluded that *Comstock* and *Barney* are distinguishable because the circuit court's actions in those cases occurred months after the pleas were submitted and the diversion agreement implemented through entry of judgment. Here, the circuit court took action before the judgment had been entered. The circuit court concluded that such factual and procedural differences were significant. We disagree.

¶ 24. If the State had asked the circuit court to enter judgment on the felony after viewing the videotape, the State's action would have violated Terrill's right to fundamental due process. Whether that action took place minutes, hours, or days after Terrill entered his pleas, would be legally irrelevant.

¶ 25. The circuit court's action violates the same fundamental due process rights as would the State's withdrawal from a plea agreement. The timing of the circuit court's action is equally irrelevant.

■

¶ 26. Because the circuit court was bound by the plea agreement, we conclude it did not have the discretion to revoke the agreement and accept Terrill's plea to the felony. Therefore, we reverse and remand with directions to reinstate the agreement.

*By the Court.*—Judgments and order reversed and remanded with directions.